**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTOINE JONES<br>DCDC No. 241912<br>1901 D Street, SE<br>Washington, DC 20003,<br><br>       Plaintiff<br><br>   v.<br><br>STEVE KIRCHNER in his individual capacity, JOSEPH SOPATA in his individual capacity, STEPHEN NAUGLE in his individual capacity, JON SNOW in his individual capacity, GREGG HORNER in his individual capacity, JOSEPH LOWERY in his individual capacity, ANGELA MCCRAVY in her individual capacity, BRIAN MUMFORD in his individual capacity, TIMOTHY PAK in his individual capacity, JARED WISE in his individual capacity, SERGHY KALUZNY in his individual capacity, KEVIN WOLF in his individual capacity, KATE BEATON in her individual capacity, TECHNICIAN BROOKS in his individual capacity, KATERINA GIKAS in her individual capacity, WILLIAM WINTERS in his individual capacity, KEVIN BUTTS in his individual capacity, MICHAEL G. SHARPE in his individual capacity, I.C.E. AGENT FRED (LAST NAME UNKNOWN) in his individual capacity, UNKNOWN I.C.E. AGENTS in their individual capacities, KELLI O'BRIEN in her individual capacity, NORMA HORNE in her individual capacity, STEPHANIE YANTA in her individual capacity, and UNKNOWN F.B.I. SWAT TEAM MEMBERS in their individual capacity,<br><br>       Defendants. | **NO. 1:12-CV-01334 (RJL)**<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1.  Plaintiff Antoine Jones files this amended complaint against Defendants pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983, for deprivations of his Fourth Amendment rights to freedom from unreasonable searches and seizures.

**PARTIES**

2.  At all times relevant to this complaint prior to his incarceration, Plaintiff was a small business owner who resided in Maryland and owned and operated Levels Entertainment Corporation, which operated a nightclub that was located at 1960 Montana Avenue NE, Washington, DC 20002 ("Club Levels").

3.  Defendants Steve Kirchner, Joseph Sopata, and Norma Horne are District of Columbia Municipal Police Department ("MPD") detectives and are sued in their individual capacities.

4.  Defendants Stephen Naugle, Kelli O'Brien, Stephanie Yanta, Jon Snow, Gregg Horner, Joseph Lowery, Angela McCravy, Brian Mumford, Timothy Pak, Jared Wise, Serghy Kaluzny, Kevin Wolf, Kate Beaton, and unknown FBI SWAT team members are Federal Bureau of Investigation ("FBI") agents. They are sued in their individual capacities.

5.  Defendant Brooks is an FBI technician. He is sued in his individual capacity.

6.  Defendants Katerina Gikas, Kevin Butts, Fred (last name unknown) and unknown ICE agents are United States Immigration and Customs Enforcement ("ICE") agents. They are sued in their individual capacities.

7.  Defendant Michael G. Sharpe is an ICE canine enforcement officer. He is sued in his individual capacity.

8. Defendant William Winters is an ICE supervisor.  He is sued in his individual capacity.

**JURISDICTION**

9. Jurisdiction is founded upon 28 U.S.C. § 1331 (federal question) because Plaintiff brings this action against the District of Columbia Defendants under 42 U.S.C. § 1983, and against the federal Defendants under *Bivens*, to vindicate rights established by the United States Constitution.

**VENUE**

10. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (e).

**FACTUAL BACKGROUND**

11. In 2004, a joint task force of the FBI and the MPD began investigating Plaintiff on suspicion of narcotics violations.  The investigation resulted in searches and arrests on October 24, 2005, including the arrest of the Plaintiff.  The events forming the basis of this complaint, however, began as early as February 8, 2004, with the warrantless search of an apartment leased by Plaintiff.

   a. **Search of the Summit Circle Apartment**

12. On February 8, 2004, Defendant ICE agents Winters, Butts, Fred (last name unknown), and unknown ICE agents broke into an apartment leased by Plaintiff, located at 9719 Summit Circle, Largo, MD 20774 (the "Apartment") without a warrant.  Approximately one week later, Defendant ICE agents returned, again without a warrant, and paid maintenance employee Nate Richburg two hundred fifty dollars ($250.00) to allow them entry into the Apartment.  At an evidentiary hearing held on November 6, 2007, Defendant Winters testified that at no point did the Defendant ICE agents obtain a search warrant for the Apartment.

13. As a current tenant at the time of the search, Plaintiff had a Fourth Amendment privacy interest in the Summit Circle Apartment such that a warrant would generally be required for a search of the premises. There were no exigent circumstances to justify the agents' warrantless entry into the Apartment on either day. In fact, no one was present in the Apartment when Defendant ICE agents entered on either day.

14. Defendants Winters, Butts, Fred (last name unknown) and unknown ICE agents acted in knowing violation of, or with reckless indifference to and deliberate disregard for, Plaintiff's constitutional rights when they searched the Summit Circle Apartment during Plaintiff's tenancy without a warrant.

### b.     Search of the Warehouse

15. In early February 2004, Defendant ICE agents Gikas, Winters, Butts, Sharpe, Fred (last name unknown) and unknown ICE agents entered and searched a warehouse leased by Plaintiff located at 400 Hampton Park Boulevard, Capitol Heights, MD 20743 (the "Warehouse") without a warrant.

16. As a current tenant at the time of the search, Plaintiff had a Fourth Amendment privacy interest in the Warehouse such that a warrant would generally be required for a search of the premises. ICE documents indicate that the search occurred after Plaintiff vacated the Warehouse on April 30, 2004. However, photographs taken by Defendant ICE agents during the search demonstrate that the search occurred during Plaintiff's tenancy. For example, a permanent pegboard that was installed in the Warehouse in late February 2004 is not depicted in the photographs. The photographs also do not depict a window that was cut into the wall between the office and remaining warehouse area before Plaintiff's lease terminated. In addition, the photographs depict items that Plaintiff removed when he vacated the Warehouse at

the end of his lease, again demonstrating that the search occurred during Plaintiff's tenancy of the Warehouse.

17. There were no exigent circumstances to justify the warrantless search of the Warehouse. Defendants Gikas, Winters, Butts, Sharpe, Fred (last name unknown), and unknown ICE agents acted in knowing violation of, or with reckless indifference to and deliberate disregard for, Plaintiff's constitutional rights when they searched the Warehouse without a warrant during Plaintiff's tenancy.

### c. Global-Positioning-System ("GPS") Search of the Truck

18. On March 5, 2004, Defendant unknown ICE agents attached a GPS tracking device to a white box truck registered in Plaintiff's name (the "Truck") without a warrant. The agents monitored the Truck using the GPS tracking device for four months, from March 5, 2004 through July 7, 2004.

19. The installation of the GPS tracking device on the Truck constituted a search for Fourth Amendment purposes. Exigent circumstances did not exist to justify the warrantless installation of the GPS or its use as a tracking device for four months. Defendant unknown ICE agents acted in knowing violation of, or with reckless indifference to and deliberate disregard for Plaintiff's constitutional rights when they installed the GPS on the Truck without a warrant.

### d. Destruction of Property at Club Levels

20. On October 24, 2005, unknown members of an FBI SWAT team destroyed the front door of Club Levels upon entering the club pursuant to a federal search warrant. The SWAT team shot smoke bombs and concussion grenades into the club, destroying the interior and permanently imbuing the carpet and furniture with the smell of smoke. The SWAT team caused this destruction despite the fact that a task force camera monitoring Club Levels did not

record anyone entering the club that day.  Plaintiff spent thousands of dollars to replace the carpet, furniture and interior of the club.  This destruction was purposeful: Defendant FBI SWAT team members could not reasonably have believed that launching smoke bombs and concussion grenades into the club would not cause damage to the interior, or was necessary to conduct the search.

21. The Fourth Amendment prohibits the unreasonable destruction of property in the course of a lawful search.  Defendant FBI SWAT team members violated Plaintiff's Fourth Amendment rights by launching smoke bombs and concussion grenades into Club Levels, causing damage to the interior, when video surveillance showed that no one had entered Club Levels that day or that there otherwise was need for such extreme measures.

22. Defendant FBI SWAT team members acted in knowing violation of, or with reckless indifference to and deliberate disregard for, Plaintiff's constitutional rights when they destroyed property at Club Levels.

  e. **Search of the Moore Street Residence**

23. In October 2005, Plaintiff and his wife resided at 10870 Moore Street, Waldorf, Maryland, in a home that they owned (the "Moore Street Residence").  The government obtained a search warrant authorizing a search of the Moore Street Residence only during daytime hours, between 6:00 AM to 10:00 PM.  On October 24, 2005 at approximately 4:45 AM, Defendants MPD detective Sopata and FBI agents Naugle, Snow, Horner, Lowery, McCravy, Mumford, Pak, Wise, Kaluzny, Wolf, and Beaton entered and searched the Moore Street Residence using an unauthorized key to gain entry.  Upon entry, Naugle and other Defendant FBI agents rushed upstairs, pointing guns at Plaintiff's head and Plaintiff's wife's head as they stood naked in their bedroom.  Defendants proceeded to take approximately 30-40 boxes containing personal

property belonging to Plaintiff that was not listed on the attachment to the warrant. Defendants found no evidence of any crime at the Moore Street Residence.

24. The timing of a search is relevant to its reasonableness under the Fourth Amendment. Defendant FBI agents and MPD officers conducted their search of the Moore Street Residence at 4:45 AM, outside the time frame authorized by the search warrant, making it unreasonable.

25. The Fourth Amendment also requires that when executing a search warrant, the police must knock and announce their presence before breaking and entering, absent exigent circumstances. Knocking and announcing is required to save the occupants of a home from needless shock, embarrassment, and violence. The use of an unauthorized key in this instance to enter a house constitutes breaking and entering.

26. The search of the Moore Street Residence did not involve exigent circumstances. At no time did Defendant FBI agents and MPD officer have a constitutionally adequate reason to execute the warrant prior to 6:00 AM and without knocking and announcing.

27. The Fourth Amendment generally requires that the items seized in a search authorized by a warrant be limited to the items specified in the warrant. The seizure of 30-40 boxes of personal property not mentioned on the attachment to the warrant unlawfully exceeded the scope of the warrant.

28. Defendants Sopata, Naugle Snow, Horner, Lowery, McCravy, Mumford, Pak, Wise, Kaluzny, Wolf, and Beaton acted in knowing violation of, or with reckless indifference to and deliberate disregard for, Plaintiff's constitutional rights when they executed the search warrant at night without knocking and announcing and seized 30-40 boxes of personal property belonging to Plaintiff that was not listed on the attachment to the warrant.

### f.     GPS Search of the Jeep Grand Cherokee

29.     In 2007, Plaintiff was the primary driver of a Jeep Grand Cherokee registered in his wife's name.  A warrant issued by the United States District Court for the District of Columbia authorized installation of the GPS tracking device within ten days and in the District of Columbia.  Defendant Brooks, however, installed the device on the eleventh day, September 27, 2007, and in Maryland.  Defendants Kirchner, Yanta, Naugle, O'Brien, Horne and Sopata then tracked the vehicle's movements for 28 days.  The device recorded the Jeep Grand Cherokee's location within 50 to 100 feet and relayed more than 2,000 pages of data to a government computer within the four-week monitoring period.

30.     The installation of the GPS tracking device on the Jeep Grand Cherokee constituted a search for purposes of the Fourth Amendment.  There were no exigent circumstances to justify the warrantless installation of the device.  Defendants Brooks, Kirchner, Yanta, Naugle, O'Brien, Horne, and Sopata violated Plaintiff's constitutional rights when they installed the GPS tracking device on the Jeep Grand Cherokee without a warrant and tracked Plaintiff's movements using the device for 28 days.  Defendants Brooks, Kirchner, Yanta, Naugle, O'Brien, Horne, and Sopata acted in knowing violation of, or with reckless indifference to and deliberate disregard for Plaintiff's constitutional rights when they installed the GPS on the Jeep Grand Cherokee without a warrant.

### g.     Incarceration

31.     Based on Defendants' searches described above, the government obtained an indictment charging Plaintiff and others with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 50 kilograms or more of cocaine base, in violation of 21 U.S.C. §§ 841 and 846.  An October 2006 trial produced a hung jury.  In March 2007, a

grand jury returned another indictment charging Plaintiff and others with the same conspiracy. The jury found Plaintiff guilty and the United States District Court for the District of Columbia sentenced Plaintiff to life imprisonment.

32. On August 6, 2010, the United States Court of Appeals for the District of Columbia Circuit reversed Plaintiff's conviction because Defendants' warrantless use of the GPS tracking device on the Jeep Grand Cherokee had violated Plaintiff's Fourth Amendment rights and the improper introduction of evidence from that tracking was not harmless. *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010). On January 23, 2012, the Supreme Court held that the placement of the GPS tracking device on the Jeep Grand Cherokee without a warrant constituted a search for Fourth Amendment purposes and affirmed the Court of Appeals' reversal of Plaintiff's conviction. *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945 (2012).

33. Plaintiff has been incarcerated since October 24, 2005 as a direct and proximate result of Defendants' searches, described above, that violated Plaintiff's constitutional rights.

### h. Harm to Plaintiff

34. As a direct and proximate result of Defendants' actions, Plaintiff suffered injuries and damages, including emotional distress, invasion of privacy, shame and humiliation, loss and destruction of property, and loss of income.

35. Plaintiff also had to spend thousands of dollars to repair Club Levels after it was damaged by the FBI SWAT team and lost profits while the club was unable to open due to the damage.

**PROCEDURAL HISTORY**

36. On June 15, 2007, Plaintiff filed *pro se* complaints in this Court for violations of his civil rights with respect to the GPS monitoring of the Jeep Grand Cherokee and the searches

of the Moore Street Residence, the Apartment and the Warehouse. Those complaints were docketed as Nos. 1:07-cv-01172, 1:07-cv-01063, and 1:07-cv-01068. On July 23, 2007, Plaintiff filed a *pro se* complaint in this Court with respect to the search of Club Levels. That complaint was docketed as No. 1:07-cv-01300. On May 27, 2008, the Court issued orders dismissing these complaints pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), on the ground that if the wrongs Plaintiff alleged were proven, it would render his criminal conviction invalid.

37. On January 31, 2009, Plaintiff filed a "Motion for Leave to File Notice of Appeal *pro se* by Plaintiff" in this Court in one of his *pro se* actions. He argued that dismissal of his claims under *Heck v. Humphrey* was improper because his § 1983 claims, if proven, would not necessarily imply that his criminal conviction was invalid. This Court denied that motion on February 26, 2009, and Plaintiff filed a Notice of Appeal, treated as a *mandamus* petition, requesting review of the denial. In an order dated March 6, 2012, the Court of Appeals affirmed the District Court's denial of Plaintiff's motion for leave to file notice of appeal, but noted "the tension between the district court's [*Heck*] ruling and the Supreme Court's observation in *Heck* that 'a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction.'" *In re Jones*, 670 F.3d 265, 267 (D.C. Cir. 2012) (*quoting Heck*, 512 U.S. at 487 n.7). The Court of Appeals suggested that, because Plaintiff's criminal conviction has now been invalidated and the *Heck* bar removed, Plaintiff could either file a motion for relief from judgment under Fed. R. Civ. P. 60(b)(5), or could file a new complaint entirely. *Id.* at 268. In response to this guidance, Plaintiff filed a new *pro se* lawsuit, and now, represented by counsel, files the instant amended complaint. Plaintiff is separately moving to re-open and consolidate the earlier *pro se* actions.

38. Plaintiff is currently facing retrial in his criminal case, No. 1:05-cr-386, before Judge Huvelle. In that case, Plaintiff has filed a motion to amend/correct his motion to suppress with respect to the search of the Warehouse (Doc. No. 624), which is currently pending before Judge Huvelle. Plaintiff's motions to suppress evidence resulting from the search of the Moore Street Residence (Doc. No. 619) and from the GPS search of the Truck (Doc. No. 646) were denied. Plaintiff nevertheless raises Fourth Amendment claims in this case with respect to the search of the Moore Street Residence and the GPS search of the Truck in order to preserve these claims insofar as they are not precluded by Judge Huvelle's rulings in case number 1:05-cr-386 or in the event her rulings are reversed on appeal.

**CLAIMS FOR RELIEF**

39. Each of the foregoing allegations are re-alleged and incorporated herein by reference.

### **CLAIM ONE**

### **VIOLATION OF THE FOURTH AMENDMENT**

### **(Search of the Apartment)**

40. Defendants' warrantless searches of the Apartment violated Plaintiff's rights under the Fourth Amendment.

41. By their direct, personal involvement in the execution of these unauthorized searches, Defendants Winters, Butts, Fred (last name unknown), and unknown ICE agents violated Plaintiff's rights under the Fourth Amendment.

42. This violation injured Plaintiff in the manner alleged above.

43. This claim is actionable under *Bivens*.

## CLAIM TWO

### VIOLATION OF THE FOURTH AMENDMENT

### (Search of the Warehouse)

44. Defendants' warrantless search of the Warehouse violated Plaintiff's rights under the Fourth Amendment.

45. By their direct, personal involvement in the execution of this unauthorized search, Defendants Gikas, Winters, Butts, Sharpe, Fred (last name unknown) and unknown ICE agents violated Plaintiff's rights under the Fourth Amendment.

46. This violation has injured Plaintiff in the manner alleged above.

47. This claim is actionable under *Bivens*.

## CLAIM THREE

### VIOLATION OF THE FOURTH AMENDMENT

### (GPS Search of the Truck)

48. Defendants' installation of a GPS tracking device on the Truck and the use of that device to monitor the Truck's location for four months violated Plaintiff's rights under the Fourth Amendment.

49. By their direct, personal involvement in installing the GPS tracking device on the Truck, Defendant unknown ICE agents violated Plaintiff's rights under the Fourth Amendment. This violation injured Plaintiff in the manner alleged above.

50. By their direct, personal involvement in monitoring the location of the Truck after the GPS tracking device was installed, Defendant ICE agents violated Plaintiff's rights under the Fourth Amendment.

51. This violation injured Plaintiff in the manner alleged above.

52. This claim is actionable under *Bivens*.

## CLAIM FOUR

## VIOLATION OF THE FOURTH AMENDMENT

### (Destruction of Property at Club Levels)

53. Defendants FBI SWAT team members unreasonably destroyed property at Club Levels in the execution of a search warrant.

54. By their direct, personal involvement in unreasonably destroying property at Club Levels, Defendant FBI SWAT team members violated Plaintiff's rights under the Fourth Amendment.

55. This violation has injured Plaintiff in the manner alleged above.

56. This claim is actionable under *Bivens*.

## CLAIM FIVE

## VIOLATION OF THE FOURTH AMENDMENT

### (Search of the Moore Street Residence)

57. By their direct, personal involvement in breaking and entering into the Moore Street Residence using an unauthorized key without knocking and announcing their presence, Defendants Sopata, Naugle, Snow, Horner, Lowery, McCravy, Mumford, Pak, Wise, Kaluzny, Wolf, and Beaton violated Plaintiff's rights under the Fourth Amendment.

58. By their direct, personal involvement in executing the search warrant during the nighttime, at 4:45 AM, when the warrant clearly stated it was to be executed between 6:00 AM – 10:00 PM, Defendants Sopata, Naugle, Snow, Horner, Lowery, McCravy, Mumford, Pak, Wise, Kaluzny, Wolf, and Beaton violated Plaintiff's rights under the Fourth Amendment.

59. By their direct, personal involvement in confiscating 30-40 boxes of personal property belonging to Plaintiff that were not mentioned on the attachment to the warrant, Defendants Sopata, Naugle, Snow, Horner, Lowery, McCravy, Mumford, Pak, Wise, Kaluzny, Wolf, and Beaton violated Plaintiff's rights under the Fourth Amendment.

60. These violations injured Plaintiff in the manner alleged above.

61. This claim is actionable as to Defendant Sopata under 42 U.S.C. § 1983 and as to the Defendants Naugle, Snow, Horner, Lowery, McCravy, Mumford, Pak, Wise, Kaluzny, Wolf, and Beaton under *Bivens*.

## CLAIM SIX

### VIOLATION OF THE FOURTH AMENDMENT

#### (GPS Search of the Jeep Grand Cherokee)

62. Defendants attached a GPS tracking device to the Jeep Grand Cherokee Plaintiff customarily drove and did so without a warrant and tracked Plaintiff's movements for 28 days, in violation of Plaintiff's Fourth Amendment rights.

63. By his direct, personal involvement in attaching the GPS tracking device without a warrant, Defendant Brooks violated Plaintiff's rights under the Fourth Amendment. This violation injured Plaintiff in the manner alleged above.

64. By their direct, personal involvement in tracking Plaintiff's movements using the GPS tracking device, Defendants Kirchner, Yanta, Naugle, O'Brien, Horne and Sopata violated Plaintiff's rights under the Fourth Amendment.

65. This violation injured Plaintiff in the manner alleged above.

66. This claim is actionable as to Defendants Kirchner, Horne and Sopata under 42 U.S.C. § 1983 and as to Defendants Yanta, Naugle, and O'Brien under *Bivens*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. ENTER JUDGMENT holding the appropriate Defendants jointly and/or severally liable to Plaintiff for compensatory damages in an amount appropriate to the proof adduced at trial;

B. ENTER JUDGMENT holding the appropriate Defendants jointly and/or severally liable to Plaintiff for punitive damages on Claims One, Two, Four and Five in an amount appropriate to the proof adduced at trial;

C. AWARD to Plaintiff his reasonable attorney fees and costs, including expert fees, and interest; and

D. GRANT any such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY OF THE CLAIMS IN THIS COMPLAINT.

Respectfully submitted,

/s/ Anthony F. Shelley
Anthony F. Shelley (D.C. Bar. No. 420043)
   *Counsel of Record*
Kathleen Wach (D.C. Bar No. 430049)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C. 20005-5701
Phone: (202) 626-5800
Facsimile: (202) 626-5801
E-mail:  ashelley@milchev.com
        kwach@milchev.com

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union of the Nation's Capital
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
Phone: (202) 457-0800
Facsimile: (202) 457-0805
E-mail:  artspitzer@aclu-nca.org