UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANTOINE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-1334 (RJL) |
| | ) | |
| STEVE KIRCHNER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION
(September _6_, 2014) [Dkt. #37]

Plaintiff Antoine Jones is currently incarcerated and serving a fifteen year sentence on a drug-related charge. Defs.' Mem. in Support of Mot. to Dismiss at 5 [Dkt. #37] ("Defs.' Mem."). In this civil suit, he alleges that a number of government officials violated his Fourth Amendment rights during searches and seizures that precipitated his arrest and ultimate incarceration. Defendants Steve Kirchner, Joseph Sopata, and Norma Horne are District of Columbia Municipal Police Department ("MPD") detectives. Am. Compl. ¶ 3 [Dkt. #4]. Defendants Stephen Naugle, Kelli O'Brien, Stephanie Yanta, Jon Snow, Gregg Horner, Joseph Lowery, Angela McCravy, Brian Mumford, Timothy Pak, Jared Wise, Serghy Kaluzny, Kevin Wolf, and Kate Beaton are Federal Bureau of Investigation ("FBI") agents. *Id.* ¶ 4. Defendant Brooks is an FBI technician.[1] *Id.* ¶ 5. Defendants Katerina Gikas, Kevin Butts, Fred (last name unknown), Michael G. Sharpe,

---

[1] The complaint does not name Technician Brooks's first name, but defendants do not argue that Brooks has not been served. *See* Defs.' Mem. at 3.

1

and William Winters are United States Immigration and Customs Enforcement ("ICE") agents and/or employees. *Id.* ¶¶ 6-8. The Amended Complaint also names unknown FBI and ICE agents. *Id.* ¶¶ 4, 6. All defendants are sued in their individual capacities. *Id.* ¶¶ 3-8.

The named defendants move to dismiss the complaint on a number of grounds. Defs.' Mot. to Dismiss [Dkt. #37] ("Defs.' Mot."); Defs.' Mem. Upon consideration of the pleadings, relevant law, and the entire record therein, defendants' motion to dismiss is GRANTED.

## BACKGROUND

Six events leading up to Mr. Jones's arrest and incarceration form the basis of this Amended Complaint. As alleged, the first three events involve ICE agents operating out of a field office in Baltimore, Maryland. Am. Compl. ¶¶ 12-19; Defs.' Mot. at 5. On February 8, 2004, defendants Winters, Butts, Fred (last name unknown), and unknown ICE agents entered an apartment Mr. Jones was leasing on Summit Circle in Largo, Maryland. Am. Compl. ¶ 12. Approximately one week later, the ICE agents returned and again entered the apartment. *Id.* At neither time did the ICE agents obtain a search warrant for the apartment. *Id.*

Mr. Jones alleges that, in early February, 2004, defendants Gikas, Winters, Butts, Sharpe, Fred (last name unknown) and unknown ICE agents entered and searched a warehouse Mr. Jones was leasing on Hampton Park Boulevard in Capitol Heights, Maryland. Am. Compl. ¶ 15. The agents did not have a warrant. *Id.* In addition, on March 5, 2004, unknown ICE agents attached a GPS tracking device to a white box truck

2

registered to Mr. Jones. *Id.* ¶ 18. The agents monitored the truck through July 7, 2004, and did not have a warrant. *Id.*

The other three events involve a joint task force comprised of MPD officers and FBI agents. *Id.* ¶¶ 11, 20-30. On October 24, 2005, unknown FBI SWAT team members entered Club Levels, a Washington, D.C., nightclub, pursuant to a federal search warrant. *Id.* ¶ 20. The agents destroyed the club's front door and shot smoke bombs and concussion grenades into the club, seriously damaging the interior. *Id.* At the time, Mr. Jones owned Levels Entertainment Corporation, which operated Club Levels. *Id.* ¶ 2. He spent thousands of dollars on repairs. *Id.* ¶ 20.

That same day, defendants Sopata, Naugle, Snow, Horner, Lowery, McCravy, Mumford, Pak, Wise, Kaluzny, Wolf, and Beaton entered and searched the home in which Mr. Jones resided with his wife, located on Moore Street in Waldorf, Maryland. *Id.* ¶ 23. The government had obtained a search warrant authorizing a search between 6:00 a.m. and 10:00 p.m., but defendants entered the house at 4:45 a.m. using an unauthorized key and without knocking and announcing. *Id.* ¶¶ 23, 25-26. Defendants encountered Mr. Jones and his wife naked in their upstairs bedroom, and pointed guns at the couple's heads. *Id.* ¶ 23. Defendants seized approximately 30 to 40 boxes of Mr. Jones's personal property that was not listed on the attachment to the warrant. *Id.*

On September 27, 2005,[2] defendant Brooks attached a GPS tracking device to a Jeep Grand Cherokee registered to Mr. Jones's wife. *Id.* ¶ 29. Mr. Jones was the primary driver of the vehicle. *Id.* The government had a warrant to attach the tracking device within ten days and within the District of Columbia, but attached it on the eleventh day and in Maryland. *Id.* Defendants Kirchner, Yanta, Naugle, O'Brien, Horne, and Sopata tracked the vehicle for 28 days. *Id.*

Mr. Jones was arrested on October 24, 2005, and has been incarcerated since that time. *Id.* ¶¶ 31, 33. He was indicted in this court on conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 50 kilograms or more of cocaine base. *Id.* ¶ 31. Mr. Jones's criminal case proceeded before my colleague, Judge Huvelle. His first trial resulted in a hung jury and mistrial; he was subsequently convicted in a second trial and sentenced to life imprisonment. *Id.*; *see generally* Docket, *United States v. Jones*, No. 05-cr-386. Mr. Jones successfully appealed his conviction. In 2010, our Circuit Court held that the defendants' warrantless use of a GPS tracking device attached to the Jeep Grand Cherokee violated Mr. Jones's Fourth Amendment rights, and that the evidence derived therefrom was not harmless. *United States v. Maynard*, 615 F.3d 544, 555-568 (D.C. Cir. 2010). The United States Supreme Court affirmed in 2012. *United States v. Jones*, 132 S. Ct. 945 (2012). Upon remand, Mr. Jones's third trial again resulted in a hung jury and mistrial. Docket Entry, *United States v. Jones*, No. 05-cr-386 (Mar. 4, 2013). Before he faced trial for a fourth time, Mr. Jones

---

[2] The Amended Complaint states the date as "September 27, 2007," which clearly is a typographical error, as Mr. Jones has been incarcerated since October 24, 2005. Am. Compl. ¶¶ 29, 33; Defs.' Mot. at 4 n.5.

4

pled guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine. Plea Agreement, *United States v. Jones*, No. 05-cr-386 (May 1, 2013), ECF. No. 748. On May 1, 2013, Judge Huvelle sentenced him to fifteen years in prison. Docket Entry, *United States v. Jones*, No. 05-cr-386 (May 1, 2013).

This is *not* the first civil action Mr. Jones has brought arising out of the searches that led to his criminal convictions. During the summer of 2007, he filed four separate complaints relating to the GPS monitoring of the Jeep Grand Cherokee and the searches of the Summit Circle apartment, the Hampton Park warehouse, Club Levels, and the Moore Street residence. Am. Compl. ¶ 36 (Case Nos. 07-cv-1063, 07-cv-1068, 07-cv-1172, and 07-cv-1300). This Court dismissed those complaints pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), which does not allow a plaintiff to recover on civil claims that, if proven, would render a criminal conviction invalid. *Id.*; *see, e.g., Jones v. Kirchner*, No. 07-cv-1063, 2008 WL 2202220 (D.D.C. May 27, 2008); *Jones v. Horne*, No. 07-cv-1300, 2008 WL 2202375 (D.D.C. May 27, 2008). In addition to his own lawsuits, Mr. Jones's wife and son also brought civil suits arising out of the Moore Street residence search and the GPS device placement on the Jeep Grand Cherokee.[3] Defs.' Mem. at 32 (Case Nos. 07-cv-1994 and 07-cv-1996).

As described above, the Supreme Court affirmed the overturning of Mr. Jones's conviction in 2012. After that decision but prior to his guilty plea, Mr. Jones moved to re-open his earlier civil actions that had been dismissed under *Heck*, which I denied as

---

[3] Mr. Jones's mother-in-law also filed a civil suit arising out of different searches. *See* Complaint, *Johnson v. Yanta*, No. 07-cv-1995 (Nov. 6, 2007), ECF No. 1-2.

5

untimely. *See* Mem. Order, *Jones v. Horne*, No. 07-cv-1300 (Sept. 19, 2013), ECF No. 51. At the same time, Mr. Jones filed a new consolidated action, which is now before this Court. In his Amended Complaint, Mr. Jones asserts six claims that his Fourth Amendment rights were violated, one corresponding to each of the six searches described above.[4] Am. Compl. ¶¶ 40-66. He requests compensatory and punitive damages. *Id.* at 15. Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(4), 12(b)(5), and 12(b)(6), with the specific grounds varying by claim. Defs.' Mot.; Defs.' Mem.

## LEGAL STANDARD

**I. 12(b)(2)**

The Court may dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Once challenged, a plaintiff bears the burden of establishing a factual basis for exercising personal jurisdiction over the defendants. *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). A plaintiff must plead specific facts that give rise to jurisdiction and cannot rely on conclusory allegations. *Robinson v. Ashcroft*, 357 F. Supp. 2d 146, 148 (D.D.C. 2004). The court is not obligated to treat a plaintiff's allegations as true, and instead may receive and consider affidavits and other relevant matter in determining jurisdiction. *See United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). However, the

---

[4] The claims are as follows: Claim I, Search of Summit Circle apartment, Am. Compl. ¶¶ 40-43; Claim II, Search of Hampton Park warehouse, *id.* ¶¶ 44-47; Claim III, GPS search of white box truck, *id.* ¶¶ 48-52; Claim IV, Destruction of property at Club Levels, *id.* ¶¶ 53-56; Claim V, Search of Moore Street residence, *id.* ¶¶ 57-61; Claim VI, GPS search of Jeep Grand Cherokee, *id.* ¶¶ 62-66.

court must resolve any factual discrepancies in the plaintiff's favor. *Crane*, 894 F.2d at 456.

## II.   12(b)(6)

Under Rule 12(b)(6), a court must dismiss a plaintiff's complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When analyzing a plaintiff's claims, the Court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted). But "the court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Finally, the court "may consider only the facts alleged in the complaint, any documents

either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ANALYSIS

### I. Claims I and II

The named ICE defendants argue that all claims against them must be dismissed because this Court lacks personal jurisdiction. Defs.' Mem. at 20-21; Defs.' Reply in Support of Mot. to Dismiss at 1-7 ("Defs.' Reply") [Dkt. # 44]. The "Jurisdiction" section of the Amended Complaint addresses only subject matter jurisdiction, not personal jurisdiction, Am. Compl. ¶ 9, so I must look to the specific facts alleged elsewhere in the Amended Complaint.

Mr. Jones does not contend that any of the ICE defendants are residents of or maintain a place of business in the District of Columbia such that the Court would have general personal jurisdiction under D.C. Code § 13-422. Instead, Mr. Jones argues he has pled facts sufficient to establish specific personal jurisdiction over the named ICE defendants for the claims at issue, Claims I and II. Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss at 12-15 ("Pl.'s Opp'n") [Dkt. # 42].

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Mr. Jones rests his jurisdictional argument

8

on one subsection of the District of Columbia's specific jurisdiction long-arm statute, which provides that a "District of Columbia court may exercise personal jurisdiction over a person . . . as to a claim for relief arising from the person's . . . (1) transacting any business in the District of Columbia." D.C.Code § 13–423(a); *see* Pl.'s Opp'n. at 12. Our Circuit has interpreted this provision as providing for jurisdiction "to the full extent allowed by the Due Process Clause [such that] the statutory and constitutional jurisdictional questions . . . merge into a single inquiry." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (internal quotation marks omitted). Jurisdiction over a defendant comports with due process when there are "minimum contacts" between the defendant and the forum, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), "such that he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The ICE defendants were based out of a Baltimore, Maryland, field office. Mot. to Dismiss, Ex. 2 [Dkt. #37-4]. Both of the searched locations at issue in Claims I and II—the Summit Circle apartment and the Hampton Park warehouse—are located in Maryland. Am. Compl. ¶¶ 12, 15. Clearly, these facts alone do not bring the ICE defendants under this Court's jurisdiction. Mr. Jones argues that the ICE defendants' "'business' was their investigation of Jones, which included tracking and studying Jones's activities in the District of Columbia." Pl.'s Opp'n at 13. For this, he appears to rely on the activities underlying Claim III—the attaching of a GPS tracking device to his truck. *See id.*

9

There are a number of flaws with plaintiff's argument. To begin, the paragraphs of the Amended Complaint that plaintiff cites as support for the claim that ICE agents tracked Jones's car in D.C. do not refer to the District at all. Am. Compl. ¶¶ 18-19. Even assuming that Mr. Jones is correct in his opposition when he contends that ICE agents monitored movement in Maryland and the District of Columbia, his allegations still do not confer jurisdiction over the named ICE defendants.

Specific ICE defendants are named only in Claim I (Summit Circle apartment search) and Claim II (Hampton Park warehouse search) of the Complaint. Am. Compl. ¶¶ 40-47. Claim III (GPS tracking) is alleged against "unknown ICE agents." *Id.* ¶ 49. There is nothing to connect the named ICE defendants to the GPS tracking installation and monitoring. And allegations of a connection would support jurisdiction over defendants only for events arising from that connection—that is, Claim III, not Claims I or II. D.C. Code § 13–423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.").

Finally, it should be noted that any contacts would be in the ICE defendants' official capacities only. Cases within our Circuit call into serious question whether a court can assert jurisdiction over a defendant in his individual capacity based solely on contacts with a jurisdiction carried out in his official capacity. *See, e.g., Ali v. District of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002) (concluding that the D.C. long-arm statute did not cover Virginian officials who communicated with the District of Columbia in their

official capacities); *Ibrahim v. District of Columbia*, 357 F. Supp. 2d 187, 193 (D.D.C. 2004) (applying *Ali*).

To the extent Mr. Jones argues that the Court has jurisdiction because the ICE agents were acting in concert with the FBI and MPD joint task force defendants, *see* Pl.'s Opp'n at 14, he fails for similar reasons. The Amended Complaint does not allege that there was any coordination between the ICE and the joint task force. *See* Am. Compl. ¶ 11 (stating "In 2004, a joint task force of the FBI and the MPD began investigating Plaintiff" with no mention of the ICE agents). And plaintiff's arguments in his opposition brief are conclusory, unsupported, and attempt to push his burden to demonstrate jurisdiction onto the defendants. Pl.'s Opp'n at 14.

Plaintiff also requests jurisdictional discovery to determine whether the ICE agents worked together with the FBI and MPD joint task force. *Id.* "[I]n order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). There is no basis for such a belief here. The claims against the ICE agents arise out of events occurring over one year before the events that give rise to the claims against the joint task force defendants, *see* Am. Compl. ¶¶ 12-30, and there is simply nothing to indicate the two groups worked in concert.[5]

---

[5] Testimony by defendant Gikas in a previous case that she and other ICE agents at one point conducted surveillance of Club Levels, *see* Pl.'s Opp'n at 14, does nothing to establish jurisdiction over any ICE defendants—including defendant Gikas—as to Claims I and II, nor does indicate coordination with the FBI/MPD joint task force.

11

Accordingly, the Court does not have personal jurisdiction over the ICE defendants named in Claims I and II.

## II. Claim V

Mr. Jones brings Claim V against defendants Sopata, Naugle, Snow, Homer, Lowery, McCravy, Mumford, Pak, Wise, Kaluzny, Wolf, and Beaton. Am. Compl. ¶¶ 57-61. He alleges that the officers who searched the Moore Street residence violated his Fourth Amendment rights in three ways: "(1) entering the home during the nighttime when the warrant authorized only a daytime search; (2) breaking and entering instead of knocking and announcing their presence; and (3) seizing 30-40 boxes of personal property not mentioned on the attachment to the warrant." Pl.'s Opp'n at 33; *see also* Am. Compl. ¶¶ 57-61.

### A. Form of Entrance and Seizure

Unfortunately for Mr. Jones, his allegations regarding a failure to knock and announce and seizure of personal property do not meet the standards for pleading a claim upon which relief can be granted. *See generally Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544. A plaintiff's complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). This facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mr. Jones does not plead sufficient facts to raise his allegations from possibility to plausibility!

Mr. Jones states in his complaint that the officers searching the Moore Street residence did not knock and announce their presence, and instead unlawfully broke and

entered. Am. Compl. ¶¶ 25, 26. However, he also alleges that he and his wife were upstairs in their bedroom when the officers entered. Am. Compl. ¶ 23. Based on the facts alleged, the court may infer that Mr. Jones did not *hear* a knock and announce, but no more. The complaint's contention that the officers did not knock and announce is a conclusory allegation that does not state a claim that officers violated a clearly established constitutional right.

Mr. Jones also states in his complaint that the officers seized 30-40 boxes of personal property that were not listed on the attachment to the warrant. Am. Compl. ¶ 27. However, Mr. Jones does not identify what property was seized, describe the scope of the warrant, nor allege how the seized items exceeded that scope. Thus, this allegation, too, is conclusory and does not state facts which, if accepted as true, are sufficient to state a plausible claim for relief.

**B.    Timing of Search**

Mr. Jones also alleges that the officers entered his Moore Street residence at 4:45 a.m. despite the fact that the search warrant the government had obtained authorized entry only during the daytime, from 6:00 a.m. until 10:00 p.m. Am. Compl. ¶ 23. Defendants argue that they are entitled to qualified immunity on this claim. Defs.' Mem. at 34-35. I agree.

A government official facing a § 1983 or *Bivens* action is protected from suit unless the official's conduct violated clearly established law at the time of the alleged

wrongdoing.[6] *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009). Qualified immunity shields officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity does not protect "those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), but a plaintiff may overcome the qualified immunity defense only if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Government officials are entitled to immunity for their actions unless "in the light of pre-existing law the unlawfulness [is] apparent." *Id.* at 640.

Mr. Jones raised the search's timing in his criminal case before Judge Huvelle. Def.'s Mot. to Reconsider Mot. to Suppress at 3-5, *United States v. Jones*, No. 05-cr-386 (D.D.C. May 22, 2012), ECF No. 619. In denying that motion, Judge Huvelle explained that "there's a substantial question about whether you have a right to have a warrant executed -- a Fourth Amendment right -- executed at any particular time." Hearing Tr. at 11:16-18, *United States v. Jones*, No. 05-cr-386 (D.D.C. Aug. 10, 2012), ECF. No. 670-5. The Fourth Amendment does not per se prohibit nighttime searches, *Youngbey v. March*, 676 F.3d 1114, 1124 (D.C. Cir. 2012), and plaintiff cites to no cases in the Supreme Court or this Circuit clearly establishing that entry under the circumstances alleged by

---

[6] I need not and do not decide whether Claim V as asserted against defendants Horne, Sopata, and Kirchner are under Bivens or § 1983, *see* Def.'s Mem. at 35 n.24, because the qualified immunity defense is identical in either case, *see Wilson v. Layne*, 526 U.S. 603, 609 (1999).

plaintiff here was unreasonable and a violation of the Fourth Amendment.[7] Therefore, the officials who searched the Moore Street residence are protected by qualified immunity from a claim arising from the timing of the search.

### III. Claim VI

Mr. Jones alleges that MPD defendants Kirchner, Horne, and Sopata, along with FBI defendants Brooks, Yanta, Naugle, and O'Brien, violated his Fourth Amendment rights when they attached a GPS device to his Jeep and tracked the vehicle's movements. Am. Compl. ¶¶ 62-66. The defendants argue that qualified immunity protects them from suit as to this claim. Defs.'s Mem. at 35-37. I agree here as well.

As described above, qualified immunity protects officials if "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638. The unlawfulness of their actions must have been apparent "in the light of pre-existing law" in order to hold officials civilly liable. *Id.* at 640.

The Claim VI defendants tracked plaintiff's car in 2005. At that time, it was not clearly established law that the attaching of a GPS device and using it to track a vehicle's movements without a warrant was a search that violated the Fourth Amendment. Although our Circuit later decided that the officers' actions constituted a search protected by the Fourth Amendment, *United States v. Maynard*, 615 F.3d 544, 555-56 (D.C. Cir.

---

[7] Indeed, our Circuit Court pointed out in *Youngbey* that "the Supreme Court has held that the protections and strictures of the Fourth Amendment are not defined by local law. *See Virginia v. Moore*, 553 U.S. 164, 174, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) ('A State is free to prefer one search-and-seizure policy among a range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional.')[.]" *Youngbey*, 676 F.3d at 1125-26.

2010), *aff'd in part sub nom. United States v. Jones*, 132 S. Ct. 945 (2012), the unlawfulness of the conduct was not apparent to the officers at the time. It is true that an official action need not previously have been held unlawful in order to fall outside the protection of qualified immunity. *Anderson*, 483 U.S. at 640. But here, based on the state of the law at the time, the officers could reasonably have thought the attachment of a GPS device and tracking of a vehicle's movements were consistent with the protections of the Fourth Amendment. The opinion on Mr. Jones's original motion to suppress this evidence in his criminal trial makes this clear. *United States v. Jones*, 451 F. Supp. 2d 71, 88 (D.D.C. 2006); *see also, e.g., United States v. McIver*, 186 F.3d 1119, 1127 (9th Cir. 1999) (holding that attaching a tracking device to a vehicle was not a search or seizure). Accordingly, defendants are protected by qualified immunity from Claim VI.[8]

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss [Dkt. #37] is GRANTED and the Amended Complaint is DISMISSED as to the named defendants. An appropriate Order will accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[8] Two of the six causes of action in this lawsuit have as defendants only "unknown" parties (Counts III and IV). As a result of Mr. Jones's failure to properly name any defendants in those counts, no defendants have been served and required to assert their defenses to the counts, and this opinion will not address them.